IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARMEN D. SOJOURNER, | : | CIVIL ACTION |
| | : | NO. 09-5662 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ASTRUE, | : | |
| Commissioner of the | : | |
| Social Security | : | |
| Administration, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                OCTOBER 8, 2010

Plaintiff Carmen D. Sojourner ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1383(c)(3). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act.

Upon consideration of the submitted pleadings and Magistrate Judge Carol Sandra Moore Wells' Report and Recommendation (doc. no. 14), the Court approves and adopts the Magistrate Judge's Report and Recommendation thus denying Plaintiff's motion for summary judgment but granting Plaintiff's motion for remand.

**I.   BACKGROUND**

   A.   Factual Background

1

Plaintiff was born on September 22, 1963. She was forty-three at the time she filed her application for SSI, and she was forty-four at the time of the administrative hearing. Plaintiff completed school through the eleventh grade and has no past relevant work experience. (See Pl.'s Mot. Summ. J. &/or Remand 1; see also R&R 3.)

Plaintiff claims that her disability onset date is March 28, 2007. (R&R 2.) Plaintiff alleges that she is disabled due to the following conditions: (1) depression, (2) anxiety, (3) agoraphobia, and (4) post traumatic stress disorder. (Id. at 2.) Plaintiff has received mental health treatment at the Warren E. Smith Center ("WES") since November 2006. (Id. at 3.) Plaintiff presently takes Zyprexa and Celexa. (Id.) Additionally, Plaintiff has previously taken Cymbalta and Klonopin. (Id.)

B.  Procedural History

On March 28, 2007, Plaintiff applied for SSI benefits. The Social Security Administration denied Plaintiff's initial claim for benefits whereupon Plaintiff requested, and was granted, an administrative hearing. (Id.) On July 2, 2008, Administrative Law Judge Irving Pianin ("ALJ") held a hearing, at which Plaintiff was found not disabled and not entitled to receive benefits. (Id.)

On September 25, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision finalizing

the Commissioner's determination to deny benefits.  (Id. 2-3.)
Plaintiff subsequently filed this complaint on November 20, 2009
seeking reversal of the ALJ's decision.  Following Plaintiff's
motion for summary judgment or, in the alternative, a motion for
remand, this case was referred to Magistrate Judge Carol Sandra
Moore Wells for a Report and Recommendation on the matter.
Therein, Plaintiff requested the Court enter summary judgment in
her favor, ruling that she is eligible to receive benefits.
Alternatively, Plaintiff asked that the Court remand her case to
the Commissioner for a decision taking into account any rulings
issued by this Court.  In opposition, the Commissioner opposed an
award of benefits and requested an affirmation of the ALJ's
decision.

On August 26, 2010, Magistrate Judge Wells issued a
Report and Recommendation recommending that the matter be
remanded to the Commissioner for further review, thereby granting
Plaintiff's motion for remand and denying her motion for summary
judgment.  Magistrate Judge Wells found that, by failing to
consider all of Plaintiff's Global Assessment of Functioning
("GAF")[1] scores and the findings of Dr. O'Connell Miles M.D., the
ALJ's conclusion that Plaintiff is not disabled lacks substantial

---

[1] A GAF score is "the clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th ed. 2000).

evidence. (Id. at 12.)

**II.  LEGAL STANDARD**

The Court undertakes a de novo review of the portions of the Report and Recommendation to which the Commissioner has objected. See 28 U.S.C. § 636(b)(1); Cont'l Cas. Co. v. Dominick D'Andrea, Inc., 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

In reviewing the Commissioner's final determination that a person is not disabled[2] and, therefore, not entitled to Social Security benefits, the Court may not independently weigh the evidence or substitute its own conclusions for those reached by the ALJ. See Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Instead, the Court must review the factual findings

---

[2]  A claimant is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 416.905, 404.1505.

Once the claimant satisfies her burden by showing an inability to return to her past relevant work, the burden shifts to the Commissioner to show the claimant (given her age, education, and work experience) has the ability to perform specific jobs existing in the economy. 20 C.F.R. §§ 416.920, 404.1520; see Rutherford v. Barnhart, 399 F.3d at 551, 546 (3d Cir. 2005).

4

presented in order to determine whether they are supported by substantial evidence. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

Substantial evidence constitutes that which a "reasonable mind might accept as adequate to support a conclusion." Rutherford, 399 F.3d at 552 (internal marks omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" Id. (quoting Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside even if the Court would have decided the factual inquiry differently. See Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999); see also Rutherford, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992))).

Because Magistrate Judge Wells properly outlined the standards for establishing a disability under the Social Security Act and summarized the five-step sequential process for evaluating disability claims, the Court will not duplicate these efforts here. See Santiago v. Barnhart, 367 F. Supp. 2d 728, 732 (E.D. Pa. 2005) (Robreno, J.) (outlining the standards and five-step sequential process for evaluating disability claims).

**III. DISCUSSION**

Plaintiff has three main contentions regarding the ALJ's determination. She argues that the following three decisions constitute reversible errors of law: (1) the ALJ erroneously attributed to the Plaintiff a GAF of 54 instead of 50; (2) the ALJ failed to discuss or evaluate all of Plaintiff's GAF scores of 50; and (3) the ALJ failed to accord any weight to the opinion of Dr. Miles, Plaintiff's treating psychiatrist. (See R&R 7.) Magistrate Wells found merit in Plaintiff's arguments and remanded the case for the following reasons.

A.  The ALJ Erroneously Attributed to the Plaintiff a GAF Score of 54 Instead of 50.

Plaintiff underwent treatment at WES. (R&R 3.) While receiving such treatment, Plaintiff received the following six GAF scores:

    i.)    11/16/06   Score 40

    ii.)   3/1/07     Score 50

    iii.)  4/12/07    Score 50

    iv.)   8/13/07    Score 50

    v.)    12/13/07   Score 50

    vi.)   4/14/08    Score 50

When evaluating Plaintiff's GAF scores, the ALJ mistakenly read Plaintiff's March 1, 2007 score as 54 instead of 50. (R&R 8-9.) This is a critical mistake because a GAF score

6

of 50 indicates a more significant degree of impairment than one of 54.[3]  As a result of this mistake, the ALJ discredited Plaintiff's November 16, 2006 low score of 40.  This sequence of events culminated in adversely affecting the ALJ's determination of Plaintiff's residual functional capacity ("RFC")[4] which, in turn, directly affected the ALJ's determination of whether Plaintiff is disabled.  (R&R 9 & n.23.)

As noted, an ALJ's disability determination must be supported by substantial evidence, 42 U.S.C. § 405(g), and this standard is not met where the ALJ's disability determination is based on incorrect reasoning.  See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993).  Here, the ALJ's disability determination is partially based on an erroneous GAF score that factored into the ALJ's RFC calculation.  Consequently, the case must be remanded for additional proceedings regarding the determination of Plaintiff's RFC score.

The Commissioner does not directly address this issue in his response to Plaintiff's request for review.  (doc. no.

---

[3] A GAF score of 41-50 corresponds to "serious symptoms." (R&R 8 n.20.)  On the other hand, a GAF score of 54, which is in the range of 51-60, corresponds to "moderate symptoms."  (Id. at 8 n.21.)

[4] RFC is defined as "the most [claimant] can do despite [his or her] limitations."  20 C.F.R. § 416.945(a).  Claimant's RFC must be determined in order to apply the fourth and fifth steps of the sequential evaluation process for determining whether an adult is or is not disabled.  See 20 C.F.R. § 416.920(e).

11.) Instead, he discusses whether the ALJ committed error by failing to discuss each instance a GAF score was reported.[5] (See Def.'s Resp. 7-18.) Later, the Commissioner briefly addresses the significance of the ALJ's error via a footnote in his Objections to the Magistrate's Report and Recommendation. (Def.'s Objections 3 n.2.) The Commissioner contends that the ALJ's mistake was simply harmless error because reading a GAF score as 54 instead of 50 is a minor mistake and Plaintiff has not established otherwise. See Shinseki v. Sanders, 129 S.Ct. 1696, 1706 (2009) ("[B]urden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); see also Def.'s Objections 7,8.

      The Commissioner's harmless error analysis is flawed. First, the Shinseki case is not on point given that it deals with the rules applicable to the Court of Appeals for Veterans Claims ("Veterans Court"). The Shinseki Court specifically spoke to the Veterans Court and what type of harmless-error review that court should apply. Id. Additionally, the Shinseki court emphasized that there is a large difference between the Department of Veterans Affairs Agency and other agencies given that Congress

---

    [5] The Commissioner recognizes that the ALJ mistakenly read a GAF score of "50" for "54," but the Commissioner proceeds to make his other arguments and overlooks this issue by instructing the Court to "[p]ut to one side for the moment the possibility that the ALJ may have misread a score." (Def.'s Resp. 7.)

8

has statutorily mandated that the Veterans Affairs Agency should help veterans develop his or her benefits claims. Id. at 1707.

Second, even if Shinseki was on point, that case supports Plaintiff's cause. In Shinseki, the Court recognized that a claimant has the burden of showing that an error was harmful. Id. at 1706. The Court emphasized that this burden does not impose "a particularly onerous requirement." Id. In fact, the Court recognized that in ordinary "civil appeals . . . the appellant will point to rulings by the trial judge that the appellant claims are erroneous, say, a ruling excluding favorable evidence." Id. Under certain circumstances, the appellant will then have to further explain why the particular ruling was harmful. Id. Here, Plaintiff can meet this harmless error analysis. Plaintiff has pointed to a ruling that she believes is erroneous — she is not disabled. Furthermore, Plaintiff has pointed to particular harmful evidence that led the ALJ to this conclusion — misreading a GAF score of 50 for a score of 54. Although the Commissioner states that this is harmless error because there is only a difference of four points at stake, those four points are critical in a determination of Plaintiff's RFC which, in turn, affects the ultimate determination of whether Plaintiff is disabled.

Therefore, the Court will affirm Magistrate Judge Wells' recommendation that the case be remanded to the

9

Commissioner for additional proceedings taking into consideration Plaintiff's correct GAF scores and explaining how those scores affect Plaintiff's RFC score.  Nevertheless, the Court discusses Plaintiff's other arguments as to provide guidance on remand.

> B.   The ALJ's Failure to Assess and Discuss Plaintiff's Multiple GAF Scores of 50 Requires Remand for Consideration of Such Evidence.

Plaintiff next argues that the ALJ erred in failing to address three of Plaintiff's GAF scores of 50.  (See Pl.'s Mot. Summ. J. &/or Remand 7.)  The ALJ addressed Plaintiff's November 16, 2006 low score of 40.  (Id. at 4.)  Next, the ALJ erroneously read Plaintiff's March 1, 2007 score as 54 instead of 50.  (Id.) The ALJ did not discuss the subsequent two GAF scores of 50 recorded on April 12, 2007 and August 13, 2007.  (Id.)  However, the ALJ addressed the score of 50 which was recorded on December 13, 2007, but failed to address the April 13, 2008 score of 50. (Id.)

In analyzing this issue, the Report and Recommendation follows in the steps of various Eastern District Courts and suggests that this case be remanded so a discussion can be afforded to the weight given to each GAF score.  The Report and Recommendation emphasizes similar Eastern District cases because the only Third Circuit cases on point are non-precedential.

A GAF score is a "numerical summary of a clinician's

10

judgment of [an] individual's overall level of functioning . . . ." See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 32 (4th ed. 2000). Therefore, GAF scores provide medical evidence which must be considered. See Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); Colon v. Barnhart, 424 F. Supp. 2d 805, 812 (E.D. Pa. 2006). While all medical evidence does not have to be accepted, the ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects." Adorno, 40 F.3d at 48. Thus it seems an ALJ should consider all GAF scores and provide an explanation for any scores that are discounted. However, the issue of whether remand is required when an ALJ fails to address or examine GAF scores of 50 or below is an area of contention within the Eastern District, and the Third Circuit has not yet issued a precedential opinion on point. The Court, therefore, surveys other decisions on this point to determine the standard to be applied in this case.

1. Applicability of Third Circuit Case Law to this Case

In 2008, the Third Circuit held that the ALJ is permitted to overlook a Plaintiff's treating physician's testimony without commenting on it when there is "[o]verwhelming evidence in the record discount[ing] its probative value, rendering it irrelevant." Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). In Johnson, the Plaintiff

contested the ALJ's finding that Plaintiff was not disabled in her right arm and shoulder. Id. at 199. The Plaintiff alleged that the ALJ's finding was erroneous because the ALJ failed to discuss all of Plaintiff's treating physician's opinion testimony. Id. at 202. However, the Johnson court upheld the ALJ's determination because the omitted physician's opinions were inconsistent with other substantial evidence. Id. The court emphasized the fact that examinations done by others indicated that Plaintiff could use her right arm. Id. at 202-03. Moreover, during the period Plaintiff claimed to have an inability to use her right arm, she gave birth to two children and none of her medical records during that time indicated any right arm limitations. Id. at 203.

This case, however, is distinguishable from Johnson because it does not focus on the failure to mention opinion testimony. Rather, as noted, this case is concerned with the ALJ's failure to mention various GAF scores that indicate a serious impairment which, in turn, affects Plaintiff's RFC score. Additionally, the evidence cited by the ALJ does not qualify as "overwhelming evidence" that would excuse the ALJ's failure to discuss all GAF scores because some of the evidence cited by the ALJ is erroneous. (See, e.g., Tr. 22 (Plaintiff had GAF score of 54).) Moreover, other evidence helpful to the Plaintiff's cause was overlooked. (See, e.g., Tr. 22 (the disabling findings

issued by Dr. Miles).)  Only two Third Circuit cases are squarely on point and both are non-precedential cases.  See Gilroy v. Astrue, 351 F. App'x 714, 715-16 (3d Cir. 2009); Irizarry v. Barnhart, 233 F. App'x 189, 190-92 (3d Cir. 2007). Interestingly, neither of these cases discuss Johnson.

In Irizarry, the court remanded the case because the "ALJ did not discuss all of the relevant evidence or explain his rejection of medical evidence." 233 F. App'x at 192.  In particular, the court remanded because the ALJ recognized a GAF of 55 but ignored earlier lower scores. Id.  Two years later, in Gilroy, the Third Circuit declined to remand a case when the ALJ failed to discuss Plaintiff's only GAF score of 45.  Gilroy, 351 F. App'x 715-16.  The Gilroy court held that the ALJ's decision was valid although there was no explicit reference to Plaintiff's GAF score. Id.  The Gilroy court emphasized that the ALJ gave substantial weight to the report made by the doctor issuing the Plaintiff's GAF score, and the report was satisfactorily addressed given that the doctor failed to "'express any opinions regarding specific limitations' or otherwise to explain the basis for his GAF rating." Id. at 716.

The instant case falls more in line with Irizarry and differs from Gilroy in a number of respects.  First, unlike Gilroy, the ALJ, in this case, failed to discuss more than just one GAF score.  (Pl.'s Mot. Summ. J. &/or Remand 3.)  Second,

13

similar to Irizarry, the ALJ failed to discuss GAF scores that preceded the scores that were discussed. (Id.) Third, the therapist and psychiatrist that assigned the Plaintiff's GAF scores reported that Plaintiff had various specific limitations (i.e., an inability to carry out instructions or make simple judgments) which differs from Gilroy, where the court emphasized that the report made by the doctor issuing the GAF score did not express any opinions regarding specific limitations. (Id. at 6.) Therefore, the Court finds Irizarry instructive in this case. This conclusion is buttressed by Eastern District case law.

2. Eastern District Case Law

There are a long line of cases in the Eastern District requiring remand when an ALJ fails to explicitly address GAF scores in the 41-50 range. West v. Astrue, No. 09-2650, 2010 WL 1659712, at *5 (E.D. Pa. Apr. 26, 2010) (remanding for failure to consider GAF scores and citing seven district court cases from 2004 through 2009 taking the same approach). On the other hand, a 2008 case strays from this approach. Hendrickson v. Astrue, No. 07-5345, 2008 WL 3539621 (E.D. Pa. Aug. 11, 2008).

In West, the court remanded the case and held that the ALJ's findings were not supported by substantial evidence because five of Plaintiff's GAF scores were not addressed. West, 2010 WL 1659712, at *3. In West, although the ALJ mentioned Plaintiff's September 2006 GAF score of 55, the court held that it was error

14

for the ALJ to omit a discussion of GAF scores that preceded and followed the score that was mentioned:

        i.)      3/20/06    Score 50

        ii.)     8/5/06     Score 50

        iii.)    7/9/07     Score 45

        iv.)     9/7/07     Score 42

        v.)      12/18/07   Score 45-50

On the other hand, in Hendrickson, the ALJ failed to mention a score of 45-48, but the court held that this was not cause for remand because the unmentioned score was Plaintiff's first score and "irrelevant and obsolete." Hendrickson, 2008 WL 3539621, at *4. The Hendrickson Plaintiff's scores were as follows:

        i.)      12/6/05    Score 45-48

        ii.)     11/3/06    Score 50

        iii.)    2/20/07    Score 50

        iv.)     5/30/07    Score 50

Ultimately, the Hendrickson court held that a failure to mention the December 6, 2005 score was not a cause for remand because the ALJ explicitly addressed the subsequent ratings of 50 which were all assigned by the same treating source. Id.

This case is more like West and other cases in this district rather than Hendrickson because the ALJ did not simply fail to discuss Plaintiff's first GAF score. Rather, the ALJ

15

erroneously read one score and failed to discuss three other scores which preceded and followed the discussed scores. (R&R 9.) Consequently, this case is distinguishable from Hendrickson. In another way, this case differs from Hendrickson because the scores not discussed were lower than the score of 54 which was discussed. Also, the scores not addressed were scores of 50 which is important because scores between 41-50 indicate "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." DSM-IV-TR at 34. These scores were the clinician's means of indicating that the clinician believed Plaintiff had serious impairments in functioning which should be considered by the ALJ when determining Plaintiff's RFC.

The foregoing provides an independent basis for the Court to affirm Magistrate Judge Wells' recommendation that the case be remanded. On remand, consideration should be given to all of Plaintiff's GAF scores and an explanation should be provided as to how each score affects Plaintiff's RFC score.

C. The ALJ Improperly Rejected Dr. Miles's Findings.

Plaintiff next argues that the ALJ rejected the findings of a disability contained in Dr. Miles's January 3, 2008 Medical Source Statement ("Report"). The ALJ's decision states that Dr. Miles made a Report which gave a "very severe diagnosis of the claimant's mental problems and f[ound] the claimant with almost all marked limitations in all the ratable areas covered."

16

(Tr. 22.) The ALJ, however, did not assign any weight to this Report because Plaintiff stated she did not know Dr. Miles when questioned at the administrative hearing. (Id.)

A review of the hearing transcript, as a whole, reveals that Plaintiff indicated that she may have known Dr. Miles. Early in the hearing, Plaintiff stated that she often sees different psychiatrists. (Transcript 34.) Immediately after making this statement, she was asked if she knew Dr. Miles. (Id.) In response, Plaintiff stated "that's another doctor that's there, but I never had him." (Id.) Later, when asked about Dr. Miles, Plaintiff stated that psychiatrists "would leave the company, then somebody would come in and take their place for a time. So I may have seen him but maybe on a one-time or twice visit or something like that." (Id. at 37.) Additionally, she was uncertain, but believed Dr. Miles may have been present when she reviewed the questions on the Medical Source Statement signed by Dr. Miles on January 3, 2008. (Id. at 34-35.)

Dr. Miles's assessment is a crucial piece of evidence in determining whether Plaintiff is disabled because he found that Plaintiff had disabling limitations. "An ALJ should give 'treating physicians' reports great weight . . . ." Brownawell v. Commissioner of Social Security, 554 F.3d 352, 355 (3d Cir. 2008) (citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)). When an ALJ receives evidence from a "treating physician

17

or psychologist or other medical source [that] is inadequate for [the ALJ] to determine whether [petitioner is] disabled, [the ALJ] will need additional information to reach a determination or a decision."  20 C.F.R. § 416.912(e).  To get this information, the ALJ should "first recontact [the] treating physician or psychologist or other medical source to determine whether the additional information . . . is readily available."  Id.

Given the great weight afforded to physicians' reports, the significance of Dr. Miles's report, and the confusion regarding whether Dr. Miles actually treated Plaintiff, the ALJ should have clarified the matter with Dr. Miles (i.e., ascertaining whether Dr. Miles treated Plaintiff) rather than merely affording Dr. Miles's Report no weight.  Moreover, given the confusion throughout the hearing relating to whether Plaintiff was treated by Dr. Miles, the ALJ should have made specific findings as to why Dr. Miles's report was afforded no weight.

These circumstances also provide grounds for remand. Therefore, the Court will affirm Magistrate Judge Wells' recommendation that the case be remanded to the Commissioner.  In undertaking additional proceedings consistent with this opinion, the Commissioner should determine what weight, if any, should be afforded to Dr. Miles's disabling findings.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment will be denied, but her motion to remand will be granted. An appropriate order will follow.

_____